UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:10-cr-00144-FDW-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>DANIEL KA, )<br>)<br>Defendant. )<br>) | ORDER |

THIS MATTER is before the Court on Defendant Daniel Ka's "Objections to Magistrate Judge's Memorandum and Recommendation" entered on January 31, 2018 (the "Objection"). (Doc. No. 45). The Memorandum and Recommendation by the magistrate judge entered on January 31, 2018 (the "M&R") (Doc. No. 43) recommended that Defendant's "Motion to Exclude Statements Made in Violation of Defendant's Fifth Amendment Rights and to Preclude Consideration of Those Statements at the Revocation Hearing" (the "Motion") (Doc. No. 40) be denied. After reviewing the briefs, testimony, and evidence presented before the magistrate judge, for the reasons set forth, the Court OVERRULES Defendant's Objections, ACCEPTS and ADOPTS the M&R, and DENIES Defendant's Motion.

I. STANDARD OF REVIEW

A district court may refer a motion to suppress to a magistrate judge for a recommendation pursuant to Federal Rule of Criminal Procedure 59(b)(1). If a party timely files "specific written objections" to the proposed recommendations, the "district judge must consider de novo any objection to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(2)-(3); see also 28 U.S.C. § 636. The court does not perform a de novo review where a party makes only "general

and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## II. BACKGROUND

After his conviction for possession of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c), on May 16, 2011, Defendant was sentenced to 60 months of imprisonment followed by five years of supervised release. (Doc. No. 23). One standard condition of Defendant's supervised release was "defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer." (Doc. No. 23 at 3). Defendant's supervised release commenced on June 16, 2016. (Doc. No. 44 at 4).

Over a year later, on October 5, 2017, Defendant's assigned probation officer, Chelsey Padilla, visited Defendant's residence after a third positive drug test. (Doc. No. 44 at 4, 7). Padilla asked and talked with Defendant about his continued drug use. (Doc. No. 44 at 8). In that discussion, Defendant admitted to using marijuana that belong to a friend. (Doc. No. 44 at 8). Padilla raised that Defendant had attributed his drug use to those surrounding him, such as friends and family, as he had previously done. (Doc. No. 44 at 8-9). In the resulting discussion, Defendant admitted that he was also involved in the sale and distribution of drugs. (Doc. No. 44 at 9). Then, Padilla asked if she were to look at Defendant's phone would she find text messages that would lead her to believe that Defendant and other individuals are involved in drug use. (Doc. No. 44 at 10). Defendant responded yes, and Padilla and Defendant looked through Defendant's text messages on his phone. (Doc. No. 44 at 10). Padilla then took the phone for forensic evaluation.

2

(Doc. No. 44 15-16). During this conversation in his home, Defendant was never detained, never refused to answer, never said he didn't want to talk further because he didn't want to incriminate himself, and never asserted the Fifth Amendment privilege against self-incrimination. (Doc. No. 44 at 6, 8, 11). Defendant agreed to provide a written statement about his drug sales on a document captioned voluntary statement. (Doc. No. 44 at 10).[1] After these conversations, Padilla advised that she would speak with her supervisor and left Defendant's home. (Doc. No. 44 at 11).

On October 16, 2017, the United States petitioned the Court for a warrant of arrest of Defendant Ka, an offender under supervision. (Doc. No. 31). The United States moved for the revocation of Defendant's term of supervision on account of four alleged violations of conditions of supervision. (Doc. No. 31). Defendant subsequently moved for the exclusion at the revocation hearing of statements made by Defendant to probation regarding his possession and selling of drugs. (Doc. No. 40). Defendant argues for this exclusion pursuant to the Fifth Amendment privilege against self-incrimination. (Doc. No. 40). The United States filed a response in opposition to Defendant's Motion. (Doc. No. 41). The magistrate judge conducted an evidentiary hearing on January 25, 2018 and entered the M&R recommending that Defendant's Motion be denied. (Doc. Nos. 43, 44). Defendant timely filed his Objection to the M&R on February 12, 2018. (Doc. No. 45).

III. ANALYSIS

Defendant objects to and asks the Court to reject the conclusion in the M&R that "Mr. Ka was not compelled to incriminate himself in violation of the Fifth Amendment because he was not placed in a 'classic penalty situation' as recognized in *Minnesota v. Murphy*, 465 U.S. 420, 434

---

[1] Defendant does not lodge any specific objections to the factual background and factual findings contained in the M&R.

(1984)". (Doc. No. 45 at 1).² Defendant contends that although Defendant did not explicitly asserted his Fifth Amendment right against self-incrimination at the time of the disclosures, his right was self-executing under the so called penalty exception. (Doc. No. 45 at 6).

The Fifth Amendment of the Constitution states "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This prohibition also allows a person to assert his or her Fifth Amendment privilege and refuse to answer "official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." Lefkowitz v. Turley, 414 U.S. 70, 77 (1973). A person desiring the protection of the privilege must claim it; the Fifth Amendment "does not preclude a witness from testifying voluntarily in matters which may incriminate him." Murphy, 465 U.S. at 427 (quoting United States v. Monia, 317 U.S. 424, 427 (1943)).

However, the Supreme Court has recognized and "held that a witness' failure to invoke the privilege must be excused where governmental coercion makes his forfeiture of the privilege involuntary." Salinas v. Texas, 570 U.S. 178, 184 (2013). In these cases, "some identifiable factor 'was held to deny the individual a 'free choice to admit, to deny, or to refuse to answer.'" Murphy, 465 U.S. at 429 (quoting Garner v. United States, 424 U.S. 648, 657 (1976)); see also Salinas, 570 U.S. at 185. The Supreme Court has held that a state's requirement that "a probationer . . . appear and discuss matters that affect his probationary status . . . without more, does not give rise to a self-executing privilege." Murphy, 465 U.S. at 435. However, "if the State, either expressly or

---

² Defendant contends the M&R is contrary to law in light of court of appeals decision in the Seventh Circuit and the Ninth Circuit. (Doc. No. 45 at 1-2 (citing United States v. Thompson, 777 F.3d 368, 379–80 (7th Cir. 2015); United States v. Saechao, 418 F.3d 1073, 1078 (9th Cir. 2005)). As to this contention, the Court notes that such decisions of the Seventh Circuit and Ninth Circuit do not create binding precedent or law on this Court. As the Court finds these decisions unpersuasive, the Court does not address them herein and focuses its analysis on binding precedent from the Fourth Circuit and United States Supreme Court.

4

by implication, asserts that invocation of the privilege would lead to revocation of probation . . . the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." Murphy, 465 U.S. at 435; see also United States v. Ramos, 685 F.3d 120, 127 (2nd Cir. 2012). Thus, courts "must inquire whether [the defendant's] probation conditions merely required him to appear and give testimony about matters relevant to his probationary status or whether they went further and required him to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent." Murphy, 465 U.S. at 436.

Here, the judgment set forth that for Defendant's supervised release of five years "defendant shall comply with the standard conditions that have been adopted by this court and any additional conditions ordered." (Doc. No. 23 at 3). Standard condition of supervision nine provided "[t]he defendant shall answer truthfully all inquiries by the probation officer . . . ." (Doc. No. 23 at 3). Defendant argues that this language stating "defendant shall comply . . ." and "defendant shall answer truthfully all inquiries . . ." renders Defendant's Fifth Amendment privilege self-executing. However, such language in the judgment does not "deny [Defendant] a 'free choice to admit, to deny, or to refuse to answer'" questions his probation officer asked him over six years later while visiting him at his house. Murphy, 465 U.S. at 429. First, the language, as in Murphy, does not expressly prohibit declining to answer questions or indicate that Defendant waives his Fifth Amendment privilege while under supervised release. Id. at 437. The language, as in Murphy, instead forbids false statements. Id. at 437. Although, in contrast to Murphy, it states "defendant shall answer truthfully *all* inquiries . . . [,]" all is used here as an adverb

5

modifying truthfully to emphasis that all answers must be truthful.[3] This construction is consistent with the statutory authority for this condition, 18 U.S.C. §§ 3583(d), 3563(b)(17), which provides the court the discretion to impose a condition to "answer inquiries by a probation officer . . . ." and the well-established constitutional prohibition against revocation of probation or supervision "for the legitimate exercise of the Fifth Amendment privilege," Murphy, 465 U.S. at 438. Second, this language was used in a judgment entered over six years prior to the conversations on October 5, 2017. There is no direct evidence Defendant recalled this precise language and feared his supervised release would be affected. See Murphy, 465 U.S. at 437 (noting that "there is no direct evidence that Murphy confessed because he feared that his probation would be revoked if he remained silent"). There is also no direct evidence that this language, or any similar language to this effect, was repeated by the probation officers when talking with Defendant. See id. at 438; United States v. Lara, 850 F.3d 686, 692 (4th Cir. 2017) (finding no evidence that his clinical social worker told defendant that his probation would be revoked). Third, there is no evidence of any other inherently compelling pressures that may work to undermine Defendant's free will. Defendant was never detained, was conversing with his assigned probation officer, and was in his own home. Murphy, 465 U.S. at 433 (noting that psychological ploys used in custodial interrogation, including defendant's unfamiliarity with the officers and the environment, were not present). Finally, revocation of supervised release was not automatic. Murphy, 465 U.S. at 438.

---

[3] The Court further notes that many oaths employed by state and federal courts throughout the country are similar in many respects to the language at issue in this case and indicate the obligation to testify to the whole truth under the threat of perjury or contempt of court. See Murphy, 465 U.S. at 426 (nothing that defendant on parole "was in no better position than the ordinary witness at a trial or before a grand jury who is subpoenaed, sworn to tell the truth, and obligated to answer on the pain of contempt, unless he invokes the privilege and shows that he faces a realistic threat of self-incrimination"); Fed. R. Evid. 603 ("Before testifying, a witness must give an oath or affirmation to testify truthfully. It must be in a form designed to impress that duty on the witness's conscience."). Therefore, the construction Defendant urges would seem to suggest that a witness under oath may also be in a classic penalty situation.

The judgment did not provide that violations of the conditions would certainly result in revocation. (Doc. No. 23 at 6 ("Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.")); see Lara, 850 F.3d at 692 (finding revocation was not automatic where conditions stated the court may revoke or extend your probation). Defendant is also entitled to a preliminary hearing before a magistrate judge and a revocation hearing before the district court judge before revocation. Fed. R. Crim. P. 32.1(b); Lara, 850 F.3d at 692 (finding revocation not automatic where afforded a court hearing before revocation). Also, the condition at issue in this case, the ninth, not only does not fall within one of the acts requiring mandatory revocation if found by the court at the hearing, 18 U.S.C. § 3583(g), but as clearly established by precedent and admitted by the United States, the United States cannot revoke supervised release for a defendant's assertion of his Fifth Amendment privilege. Lara, 850 F.3d at 693. Thus, the totality of the circumstances show that Defendant was not in a position that "required him to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent." Murphy, 465 U.S. at 436. The threat of revocation was not nearly certain. Lara, 850 F.3d at 692 (citing Murphy, 465 U.S. at 437-38). As established by the evidentiary record, Defendant "answered freely and without any suggestion of invoking his Fifth Amendment privilege" and "was never threatened with the imposition of a penalty sufficient to overcome his freedom of choice to remain silent." Id. Therefore, the conclusion by the magistrate judge that Defendant was not compelled to incriminate himself in violation of the Fifth Amendment because he was not placed in a classic penalty situation is accepted. As in Murphy and Lara, Defendant cannot invoke the Fifth Amendment privilege to prevent the use of information he volunteered or the fruits of

7

that information in this matter.[4]

## IV. CONCLUSION

IT IS THEREFORE ordered that Defendant's Objections to the M&R are OVERRULED (Doc. No. 45). The Court hereby ACCEPTS and ADOPTS the M&R (Doc. No. 43) and DENIES Defendant's Motion (Doc. No. 40).

IT IS SO ORDERED.

Signed: February 15, 2018

Frank D. Whitney
Chief United States District Judge

---

[4] The Court also notes that Murphy addressed "the issue . . .[of] whether the Fifth and Fourteenth Amendments prohibit the introduction into evidence of the admissions in Murphy's *subsequent criminal prosecution*." Id. at 422 (emphasis added). See also United States v. Lara, 850 F.3d 686 (4th Cir. 2017) (considering exclusion of admissions made while participating in program ordered as condition of probation in a sentencing hearing for a subsequent criminal prosecution). The Supreme Court in Murphy, using as an example a residential condition for probationary status, clarified that no classic penalty situation would arise "if the questions put to a probationer were relevant to his probationary status and posed no realistic threat of incrimination in a separate criminal proceeding." Id. at 435, n. 7. The Supreme Court then proceeded to say, "[n]either in our view, would the privilege be available on the ground that answering such questions might reveal a violation of [his conditions of probationary status] and result in the termination of probation . . ." as "a revocation proceeding . . . is not a criminal proceeding." Id. (citations omitted). "[T]he privilege against compelled self-incrimination [is not] available to the probationer . . . on the ground that the information sought can be used in revocation proceedings." Id.; see also Garner, 424 U.S. at 655 ("Unless the government seeks testimony that will subject its giver to criminal liability, the constitutional right to remain silent absent immunity does not arise. An individual therefore properly may be compelled to give testimony, for example, in a noncriminal investigation of himself."). This analysis, as put forth by the United States, may suggest that a defendant may be unable to invoke the Fifth Amendment privilege to prevent the use of information he volunteered or the fruits of that information solely on the ground that it is used in a revocation proceeding. (Doc. No. 45). However, as this matter can be addressed without addressing this argument, the Court declines to address it.